Otis GOSNELL, Sandra Gosnell, and Supreme Supplies, Inc., Plaintiffs–Appellees,

v.

CITY OF TROY, ILLINOIS, a municipal corporation, Ron Criley, individually and as Mayor of the City of Troy, Byron K. Joyce, individually and as Alderman of the City of Troy, et al., Defendants–Appellants.

No. 92–1541.

United States Court of Appeals, Seventh Circuit.

Argued Oct. 20, 1992.

Decided Nov. 17, 1992.

As Amended Nov. 17, 1992.

---

Stephen R. Swofford, Bruce L. Carmen (argued), Kendall Griffith, Hinshaw & Culbertson, Chicago, Ill., Alan D. Walker, Dailey & Walker, Granite City, Ill., for plaintiffs-appellees.

John L. McMullin, Kenneth A. Slavens, Brown & James, St. Louis, Mo., John P. Long (argued), Gregory James Weber, Troy, Ill., for defendants-appellants.

Before KANNE and ROVNER, Circuit Judges, and WILL, Senior District Judge.*

ILANA DIAMOND ROVNER, Circuit Judge.

This case involves an interlocutory appeal from an order of the district court denying a motion for summary judgment. Because the district court did not conclusively determine the question of qualified immunity, the collateral order doctrine does not apply to this case. As a result, this appeal must be dismissed for lack of appellate jurisdiction.

## I. BACKGROUND

A detailed recitation of the background is necessary for a full understanding of the jurisdictional problem which exists in this case. Plaintiffs Otis Gosnell, Sandra Gosnell, and Supreme Supplies, Inc. (collectively, the "Gosnells") are subdivision developers. In 1978, the Gosnells submitted a preliminary and final plat of the Oakbridge Estates subdivision to the City of Troy, Illinois (the "City"). The plat indicated that the Gosnells would relocate a "drainage swale" onto a 40–foot–wide drainage easement in the subdivision. A swale is a slight depression which is often wet and covered with vegetation. The City approved this plan.

Instead of building the drainage swale, the Gosnells installed a thousand-foot-long lake that was six feet deep and fifty feet wide. This lake was only twenty feet from an adjoining subdivision, instead of the eighty feet identified in the plat. When City officials heard that the Gosnells were creating a lake in violation of the plat, they took action. The City filed an injunctive suit in state court against the Gosnells

---

* The Honorable Hubert L. Will, Senior District Judge of the Northern District of Illinois, is sitting by designation.

seeking to have the lake modified into the originally approved swale. The City also recorded *lis pendens* notices regarding the lawsuit in the Recorder of Deeds' office for those houses the Gosnells developed next to the lake.[1]

In August 1983, City Mayor Ron Criley withheld two building inspections of the Gosnells' buildings and refused to turn on the water at one of the houses. In September, the City Council voted not to permit any further final building inspections at the Gosnells' subdivision, or issue them any new building permits, until the lawsuit was resolved or the Gosnells erected a fence around the lake. The Gosnells counter-claimed in the state court lawsuit, and the circuit court ordered the City to conduct the inspections and issue any new permits without "extra-ordinary conditions."

In 1985, the Gosnells filed in state court a civil rights lawsuit against the City and the City officials under 42 U.S.C. § 1983. Their complaint alleged that defendants violated the Gosnells' due process and equal protection rights by seeking the injunction, recording the *lis pendens* notices, denying the interim building inspections and new permits, and refusing to turn on the water at one house. The Gosnells voluntarily dismissed this case without prejudice in November 1990, but refiled the complaint in state court on December 12, 1990. The City then removed the case to the district court on January 10, 1992. The state court stayed the injunctive suit filed by the City pending the outcome of the federal civil rights action. On June 21, 1991, the Gosnells filed a multi-count amended complaint in district court.

On October 4, 1991, defendants, with the exception of the City, filed a motion for summary judgment on Counts I and II of the second amended complaint contending that they were entitled to qualified immunity. These defendants argued that they did not violate any clearly established constitutional rights by their actions in 1983. The Gosnells responded by citing pre–1983 Illinois cases which held that a builder has a

vested interest in the issuance of a building permit.

On November 8, 1991, the district court permitted the Gosnells to file a second amended complaint and on the same day found that the individual defendants' motion for summary judgment alleging qualified immunity was moot as a result. On November 14, 1991, the Gosnells filed the second amended complaint. On December 23, 1991, the district court granted the individual defendants' request to reinstate their earlier motion for summary judgment asserting qualified immunity as a defense to the second amended complaint. The Gosnells then filed a request to reinstate their earlier response to the summary judgment motion, and the individual defendants sought leave to file a reply to that response. On January 23, 1992, the district court granted both requests.

However, the individual defendants *never* filed a reply on the question of qualified immunity. Instead, on January 31, 1992, the individual defendants filed what they captioned "Defendants' Motion for Summary Judgment." This second motion made no mention of qualified immunity and instead argued that the Gosnells' allegations of due process and equal protection violations were deficient as a matter of law.

The Gosnells recognized that a problem had evolved and filed a motion seeking leave to respond to defendants' "reply." This motion explained that defendants had raised entirely new arguments in their reply unrelated to qualified immunity. On February 10, 1992, the district court denied the Gosnells' motion to file such a sur-reply.

Finally, on February 18, 1992, the district court denied the individual defendants' motions for summary judgment. The district court acknowledged in the introduction of the order that it had two motions for summary judgment before it. "The individual defendants have filed a motion for summary judgment on Counts I and II of plaintiffs' second amended complaint. A second

---

1. A notice of *lis pendens* warns potential purchasers that the title to the property is in litigation. *United States v. Peters,* 791 F.2d 1270, 1279 n. 5 (7th Cir.1986).

motion for summary judgment was filed on behalf of all defendants as to each count of plaintiffs' second amended complaint." *Gosnell v. City of Troy,* No. 91 C 25, slip op. at 1 (S.D.Ill. Feb. 18, 1992). Despite this statement, the order makes no mention of qualified immunity. Instead, the body of the order seems to address only the legal sufficiency argument raised in the second motion for summary judgment. The district court stated:

> Defendants' arguments with regard to Counts I and II are essentially arguments that plaintiffs have failed to state a cause of action under 42 U.S.C. § 1983. Such arguments, while appropriate for a motion to dismiss, are not sufficient for a summary judgment motion. Consequently, defendants' motions for summary judgment on Counts I and II are DENIED.

*Id.* at 2. Defendants filed a notice of appeal to this Court on February 28, 1992.

## II. ANALYSIS

We find ourselves in a jurisdictional limbo. Ostensibly, the rejection of the defense of qualified immunity by the district court supplies jurisdiction over this appeal. But because the order of the district court is entirely silent as to qualified immunity, this Court's jurisdiction to hear the appeal is in doubt. Yet, the parties have not adverted to this important issue in their written submissions, let alone offered arguments as to the propriety of jurisdiction.

■ It is in large measure defendants who bear responsibility for failing to bring to light the fact that the district court appears not to have ruled on the qualified immunity issue. When questioned by this Court at oral argument, counsel for defendants explained that he was confused over whether the district court ruling pertained to the issue of qualified immunity. Counsel stated, "when the judge handed me the order, I looked at it and I asked, 'where is the ruling on the question of qualified immunity?' and [the judge] said, 'that's it.' "

Although counsel took this first step in bringing the problem to the attention of the district court, he did not take the next reasonable step, which would have been to file a motion to reconsider or clarify. Thereafter, defendants, apparently not knowing where next to turn, came into the appellate court where they failed to flag this problem in their jurisdictional statement, although every litigant has a responsibility to bring jurisdictional problems to the attention of this Court. *Espinueva v. Garrett,* 895 F.2d 1164, 1166 (7th Cir.1990); Circuit Rule 28(b) and (c) of the United States Court of Appeals for the Seventh Circuit.

■ But defendants are not alone in their bewilderment. The Gosnells likewise failed to note that this problem existed in their jurisdictional statement. They merely stated: "[defendants'] jurisdictional statement is complete and correct to the extent this Court determines that defendants raise legitimate questions of qualified immunity. If not, the appeal should be dismissed for want of a true collateral order." This statement seems to say that if appellants' argument on the merits regarding qualified immunity fails, then the appeal should be dismissed. Their conclusion that the appeal should be dismissed is correct, but for the wrong reason.[2]

The United States Supreme Court held in *Mitchell v. Forsyth,* 472 U.S. 511, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985), that the denial of a motion for summary judgment based on qualified immunity, to the extent that the denial turns on an issue of law, is appealable under the collateral order exception to the final judgment rule. *Id.,* 472 U.S. at 530, 105 S.Ct. at 2817; *Cohen v. Beneficial Indus. Loan Corp.,* 337 U.S. 541, 546, 69 S.Ct. 1221, 1225, 93 L.Ed. 1528 (1949). The final judgment rule derives from 28 U.S.C. § 1291, which gives federal appellate courts "jurisdiction of appeals from all final decisions of the district courts ... except when direct review may be had in the Supreme Court." This lan-

---

**2.** This Court may raise a jurisdictional problem, such as the one presented in this case, on its own motion, even if the parties have failed to identify it. *See Autocephalous Greek–Orthodox Church v. Goldberg & Feldman Fine Arts, Inc.,* 917 F.2d 278, 284 n. 7 (7th Cir.1990).

guage forbids an appeal under section 1291 unless there has been "a decision by the district court that 'ends the litigation on the merits and leaves nothing for the court to do but execute the judgment.'" *Coopers & Lybrand v. Livesay,* 437 U.S. 463, 467, 98 S.Ct. 2454, 2457, 57 L.Ed.2d 351 (1978) (quoting *Catlin v. United States,* 324 U.S. 229, 233, 65 S.Ct. 631, 633, 89 L.Ed. 911 (1945)).

■ Despite this requirement, the Supreme Court has recognized through the collateral order doctrine that a small class of cases demand immediate review. Under this doctrine, an order is appealable under section 1291 if it (1) conclusively determines a disputed question, (2) resolves an important issue completely separate from the merits of the action, and (3) is effectively unreviewable on appeal from a final judgment. *Coopers & Lybrand,* 437 U.S. at 468, 98 S.Ct. at 2458. In *Mitchell,* the Court applied the *Coopers & Lybrand* test to the denial of summary judgment on the grounds of qualified immunity and held that such a denial is a collateral order. *Mitchell,* 472 U.S. at 526, 105 S.Ct. at 2815.

■ The collateral order doctrine does not apply to this case because the district court never expressly ruled on the question of qualified immunity and therefore never "conclusively determine[d] this disputed question." *Coopers & Lybrand,* 437 U.S. at 468, 98 S.Ct. at 2457. Although the district court noted that it had two motions for summary judgment pending before it, one of which raised the issue of qualified immunity, the court went on to address only the arguments presented in the second motion regarding the legal sufficiency of plaintiffs' claims. *See, e.g., Justice v. Blackwell,* 820 F.2d 238, 240 (7th Cir.1987) (collateral order doctrine does not apply where the district court failed to address the merits of a motion to amend an answer to include a qualified immunity affirmative defense). The apparent confusion experienced by the district court in this case may have resulted from the fact that defendants filed a second motion for summary judgment raising entirely new issues, rather than the "reply" on the qualified immu-

nity motion ordered by that court. It is also possible that the district court intended to rule on the question of qualified immunity in its order. However, without findings of fact and conclusions of law, this Court cannot resolve the qualified immunity question on appeal. As a result, no interlocutory order exists in this case which the Court may review.

### III. CONCLUSION

Because the district court has yet to clearly rule on the merits of the qualified immunity issue, no appealable order exists under the collateral order doctrine. The Court therefore reaches no conclusion on the merits of the qualified immunity claim, which the district court should consider below. As a result, this appeal is DISMISSED.